**ORDERED.**

**Dated:  August 18, 2023**

Jacob A. Brown
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

Greer Transport LLC,

      Debtor.

Case 3:23-bk-00124-JAB
Chapter 11
Subchapter V

**ORDER CONFIRMING CHAPTER 11
SUBCHAPTER V PLAN AND SCHEDULING STATUS CONFERENCE**

THIS CASE came before the Court to consider confirmation of the Chapter 11 Plan of Debtor Greer Transport LLC, dated April 18,2023 [Doc.#58] (the "Plan"). A hearing was held August 15, 2023. The Court finds that the Plan meets the requirements of §1129(a)[1] as modified by § 1191 and that all ʻclasses of impaired claims have accepted the Plan.

It is **ORDERED**:

1. The Plan is confirmed as a consensual plan under § 1191(a). A copy of the Plan is attached as Exhibit "A".

2. The provisions of the Plan are binding upon the Debtors and creditors

---

[1] References to statutory sections in this order are references to sections of the Bankruptcy Code, unless otherwise indicated; and, references to rules are references to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

pursuant to § 1141(a) except as provided in §§ 1141(d)(2) and (3).

3. The property of the estate shall vest in the Debtors on the effective date of the Plan.

4. Debtors may operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provisions of the Bankruptcy Code after the effective date of the Plan. Further, Debtors are entitled to retain and compensate professionals without the necessity of further approval of this Court after the effective date of the Plan.

5. Debtors shall comply with the guidelines set forth by the Office of the United States Trustee until the closing of this case by the entry of a final decree by the Court.

6. The failure to reference or address all or part of any particular provision of the Plan herein has no effect on the validity, binding effect, or enforceability of such provision and such provision has the same validity, binding effect, and enforceability as every other provision of the Plan. To the extent that any inconsistencies exist between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

7. Except as otherwise provided in a separate order of the Court, all executory contracts and unexpired leases not otherwise assumed are deemed rejected as of the effective date of the Plan.

8. Debtor shall serve as the disbursing agent for the payments required to be made to creditors and interested parties under the Plan.

9. Debtor shall commence disbursements on the effective date of the Plan. The

term "effective date of the Plan" is defined in Article I, Section B, paragraph 16 to mean "the 15th day of the second month following the date of the entry of order of confirmation which is final and non-appealable."  This order will not be final and non-appealable until September of 2023.  Therefore, the effective date of the Plan will be October 15, 2023 unless an appeal is timely filed.

10. Debtors shall file a certificate of substantial consummation when the Plan has been substantially consummated. Further, Debtors will promptly move for a final decree upon substantial consummation.

11. The service of the Subchapter V Trustee in the case shall terminate when the Plan has been substantially consummated pursuant to § 1183 except that the United States trustee may reappoint a trustee as needed for performance of duties under § 1183(b)(3)(C) and § 1185(a).

12. This Plan is confirmed under § 1191(a) and, therefore, Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code on the effective date of the Plan. The Debtors will not be discharged from any debt: imposed by this Plan; or excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

13.  A status conference in this case will be held on December 13,2023, at 1:30 PM in Courtroom 4C, on the fourth floor of the Bryan Simpson United Stated Courthouse located at 300 North Hogan Street in Jacksonville, Florida to review efforts to consummate the Plan and the time needed to seek a final decree.

14. The Court may continue the status conference upon announcement made in

open court without further notice.

15. All parties may attend the hearing in person. Parties are directed to consult the Procedures Governing Court Appearances regarding the Court's policies and procedures for attendance at hearings by Zoom or telephone available at (Procedures Governing Court Appearances - Jacksonville). If the Court permits appearances by Zoom, the Court will enter a separate Order Establishing Procedures for Video Hearing shortly before the hearing. Parties permitted to appear by telephone must arrange a telephonic appearance through Court Call (866-582-6878) by 5:00 p.m. the business day preceding the hearing.

16. If the Court determines there has been substantial confirmation of the Plan prior to the date of  the status conference, the status conference shall be deemed cancelled without further notice.

17. The Court retains jurisdiction to enforce the terms of this Order.

### 

Attorney Richard A. Perry is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a Proof of Service within three days of entry of the order.

# EXHIBIT "A"
# THE PLAN

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                              Case 3:23-bk-00124-JAB

GREER TRANSPORT LLC,                                Chapter 11
                                                    Subchapter V
        Debtor.

---

## CHAPTER 11 PLAN

Debtor filed a voluntary petition under chapter 11[1] and proposes the following Plan pursuant to § 1189. Debtor is proceeding as a small business debtor under Subchapter V.

***Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.***

## ARTICLE I
## DEFINITIONS AND RULES OF CONSTRUCTION

### A. Definitions Applicable Specifically to this Plan

The following definitions apply specifically to this plan and are in addition to the Standard Definitions set forth in this article.

1. The term "Debtor" shall mean Greer Transport LLC who filed the above captioned case.

2. The term "petition date" shall mean the date the Debtor filed a voluntary petition under chapter 11. The petition date is January 20, 2023.

3. The term "Trustee" shall mean Aaron R. Cohen who was appointed pursuant to § 1183 in this case and, shall include such other person who might later be named as the trustee in this case.

---

[1] Under Paragraph 2 of the Rules of Construction set forth in Article I "[r]eferences to statutory sections and chapters in the Plan are references to sections and chapters of the Bankruptcy Code, unless otherwise indicated; and, references to rules are references to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated."

## B. Standard Definitions

The definitions set forth in § 101 shall apply when interpreting this Plan.  Those definitions are supplemented as set forth below**.**

1. The term  "administrative expense claim" or "administrative claim" shall mean a claim which is an allowed administrative expense under § 507(a)(2).

2. The term "allowed claim" shall mean a claim:
a. Which was documented by a proof of claim filed with the court within the applicable period of limitation fixed by Rule 3001; or
b. Which was scheduled in the list of creditors prepared with the court pursuant to Rule 1007(b), and not listed as disputed, contingent or unliquidated as to the amount;
c. Which is not the subject of a pending objection before the court; or
d. Which has not been disallowed by the court.

3.  The term "Bankruptcy Code" shall mean the Bankruptcy Code codified at 11 U.S.C. §101 et seq.

4.  The term "claim" shall mean any right to payment, or right to an equitable remedy, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, beneficial, secured or unsecured.

5.  The term "class" shall mean any class into which allowed claims or allowed interests are classified pursuant to the provisions of § 1122.

6.  The term "collateral" shall mean the property or interest of the Debtor or the estate which is subject to the lien, security interest or charge of a creditor holding a secured claim.

7.  The term "confirmation date" shall mean the date upon which the order of confirmation is entered by the court.

8.  The term "confirmation order" shall mean an order entered by the court confirming the plan pursuant to §1191.

9.  The term "consensual plan" shall mean a plan as to which each class of has voted to accept the plan. Whether a class has voted to accept a plan shall be determined in accordance with §1126.  A class has voted to accept a plan if:
a. The plan is accepted by creditors holding at least two-thirds in the amount and more than one-half of the number of the allowed claims in the class;  or,
b.  If the rights of creditors in a class are not impaired (changed or modified).

10.  The term "Court" shall mean the United States Bankruptcy Court for the Middle District of Florida, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

11. The term "creditor" shall mean any person or entity that has a claim against the Debtor.

12. The term "debtor" when spelled in all lower case shall mean and refer to any person or entity concerning which a case under the Bankruptcy Code has been commenced as set forth in § 101 (13).

13. The term "deficiency claim" shall mean the difference between the total amount of a claim and the value of any collateral securing the claim.

14. The term "disbursing agent" shall mean the person or entity designated to distribute payments to creditors and interested parties under the Plan.

15. The term "disposable income" shall mean disposable income as defined by § 1191(d).

16. The term "effective date of the Plan"  shall mean the 15th day of the second month following the date of the entry of order of confirmation which is final and non-appealable.

17. The term "impaired claim" shall mean a claim that is impaired within the meaning of § 1124.

18. The term "impaired class" shall mean a class containing only impaired claims.

19. The term "nonconsensual plan" shall mean a plan that meets all applicable requirements in § 1129(a)  are met, except for those in paragraphs (8), (10), and (15), and at least one class has submitted ballots voting to reject the plan, as determined in accordance with § 1126.

20. The term "nonpriority unsecured claim " shall mean a claim which is an allowed claim which is not secured or entitled to priority under  §507(a) .

21. The term  "plan" when spelled in all lower case shall mean a plan as contemplated by § 1189.

22. The term "Plan" shall mean this plan as amended and modified.

23. The term "plan proponent" shall mean the Debtor.

24. The term "priority unsecured claims" shall mean a claim which is an allowed unsecured claim which is entitled to priority under §507(a)(8) .

25. The term "satisfied"or "satisfaction" shall mean the payment of an allowed claim as provided for under the term of the plan, including any interest or other charges as provided for under the terms of the plan. Unless the plan specifies otherwise, an

allowed claim shall be deemed satisfied, if paid in full, without interest.

26.  The term "small business debtor" shall mean a debtor who qualifies as a small business debtor under § 1182(1).

27.  The term "secured claim" shall mean an allowed claim secured by collateral, to the extent of the value of the collateral determined in accordance with § 506(a).

28.  The term "Subchapter V" shall mean subchapter V of chapter 11 of the Bankruptcy Code.

29.  The term "term of this plan" shall mean a term of 36 months unless extended to a maximum of 60 months in the confirmation order.

30. The term "unimpaired claim" shall mean a claim that is not impaired within the meaning of § 1124.

31. The term "unimpaired class" shall mean a class containing only unimpaired claims.

## B. Rules of Construction

The rules of construction set forth in § 102 shall apply when interpreting this Plan.  They are supplemented as set forth below.

1. A plan is a document which establishes the rights of creditors and interested parties.  A plan will not be effective unless or until it is confirmed by the Court at a hearing and after a confirmation order has been entered.

2. References to statutory sections and chapters in the Plan are references to sections and chapters of the Bankruptcy Code, unless otherwise indicated; and, references to rules are references to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

3.  If any provision in this plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

4.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

5.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure) the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE II
## PAYMENTS AND DURATION OF PLAN

### A. Source of Funding for Plan

1.  This Plan of Reorganization under subchapter V of chapter 11 of the Bankruptcy Code proposes to pay creditors of the Debtor from future monthly income derived from the operation of its commercial trucking operation and repair shop.

### B.  Amounts to Pay and Duration of Payments

1.  Debtor proposes to pay plan payments of $13,965 each month for 36 months

2.  The monthly disposable income of the Debtor is $13,965**.** The attached disposable income analysis marked as Attachment "A" sets forth how the disposable income of the Debtor was calculated.

3.  The proposed distributions to creditors and interested parties is set forth in Attachment "B".

4. If the estate were liquidated there would be available for distribution to unsecured creditors the sum of $274,690 after taking into account all liens and costs of liquidation. The attached liquidation analysis marked as Attachment "C" sets forth how that was calculated.

5.  Debtor estimates a total of $331,075 will be distributed to creditors holding nonpriority unsecured claims.  The treatment of creditors holding nonpriority unsecured claims is set forth in Class 4 of this Plan.

6.  Debtor estimates there are $834,057.09 of allowable nonpriority unsecured claims. Creditors holding nonpriority unsecured claims will receive distributions equal to 40% of all such claims without interest.

## ARTICLE III
## ADMINISTRATION OF THE PLAN

1. If this Plan is confirmed as a consensual plan under § 1991(a), Debtor shall act as the disbursing agent[2] make all payments to creditors and interested parties under the Plan.

2.  If the Plan is confirmed as a nonconsensual plan under § 1991(b), the Trustee shall have the option to be the disbursing agent under the Plan or designate the Debtor to act in that capacity under the supervision of the Trustee.

---

[2]  The term "disbursing agent' is a defined term under the Plan. Please refer to paragraph 14 of the Standard Definitions set forth in Article I of the Plan for a full definition.

3.  If the Plan is confirmed as a consensual plan the Trustee shall be discharged upon substantial consummation of the Plan pursuant to § 1183( c).

4.  If the Plan is confirmed as a non-consensual plan**,** the Trustee shall be retained pursuant to § 1194(b).

5. The Trustee shall be compensated as set forth in Article IV of the Plan.

6.  Debtor shall prepare and file monthly operating reports as required by the United States Trustee through the effective date of the plan.

7. Debtor shall prepare and file quarterly operating reports as required by the United States Trustee after the effective date of the plan through the last payment required under the Plan or as directed by the United States Trustee**.**

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

1. If the Plan is confirmed as a consensual plan or nonconsensual plan, administrative expense claims shall receive the treatment set forth below.

2.  Compensation of the Trustee shall be treated as an Administrative Expense under § 507(a)(1)(C).

3.  Prior to the effective date of the Plan the Trustee shall be compensated at a flat the rate of $1,000.00 per month in accordance with the *Order Prescribing Procedures in Chapter 11 Subchapter V Case, Setting Deadline for Filing Plan, and Setting Status Conference* dated January 27, 2023 [Doc 11].

4.  If the Plan is confirmed as a nonconsensual plan, the Trustee shall periodically file a an application for compensation of fees and costs.  He shall be compensated at his normal hourly rate or such rate as approved by the Court.

5.  Any allowed administrative expense claim held by the Trustee on the Confirmation Date shall be paid in full on or before the Effective Date of the Plan in cash, if available, and if not, prior to payments being made under the Plan to satisfy any other administrative expense claim, or unsecured priority claim or nonpriority unsecured claim.

6. Legal counsel and all other professionals shall file a fee application for legal fees and costs for the purpose of determining an allowable administrative expense claim.

7.  All allowed administrative expenses accruing prior to the Confirmation Date the shall be paid in full on or before the Effective Date of the Plan in cash, if available and if not, prior to payments being made under the Plan to satisfy any unsecured priority claims or nonpriority unsecured claim.

8.  Administrative claims held by those other than the Trustee may be paid over the term of this plan only if the Plan is confirmed as a consensual plan or the holder of such claim consents.

## ARTICLE V
## CLASSIFICATION OF CLAIMS AND INTERESTS

All claims are classified under the Plan, except administrative expense claims.

**Class 1 - Leaf Capital Funding, LLC**
**Class 2 - Small Business Administration**
**Class 3 - Priority Unsecured Claims**
**Class 4 - Non-Priority Unsecured Claims**
**Class 5 - Equity Interest of the Debtor in the Estate**

## ARTICLE VI
## TREATMENT OF CLASSIFIED CLAIMS

**Class 1 - Leaf Capital Funding, LLC**

1.  This class is the allowed secured claim of Leaf Capital Funding, LLC .

2. Leaf Capital Funding, LLC holds a purchase money security interest in fleet management software used by the Debtor in the commercial trucks which it owns. A UCC-1 Financing Statement has been property filed with the Florida Secured Transaction Registry and has not expired.

3. Leaf Capital Funding, LLC filed Claim 8 as a fully secured claim in the amount of $33,702.62.

4.  This creditor shall receive 36 equal monthly payments of $1,078.02.  This equals the amount of the claim together with interest at the contract rate of 9.54% per annum.

5. This creditor shall retain its lien and have the right to enforce its lien rights if a default is made.  If there is default in payments to this creditor after the effective date of the plan, this creditor shall have the right to demand that the default in payments be cured within 30 days of written notice to the Debtor.  If the Debtor fails to cure the default within the 30 day period, this creditor shall have the right to accelerate the balance owed and enforce its lien rights as provided in the original agreement between the parties.

6. This is an impaired class.

**Class 2 - Small Business Administration**

1.  This class is an allowed secured claim of the Small Business Administration.

2.   A proof of claim has not been filed by this creditor. The principal balance is $500,000.00.

3.  The Small Business Administration has a lien on all personal property of the Debtor with the exception of titled motor vehicles and trailers. A UCC-1 Financing Statement has been property filed with the Florida Secured Transaction Registry and has not expired.

4.  The rights of the Small Business Administration shall remain unchanged and it shall be paid according to the underlying agreement between the parties.

5.  This creditor shall retain its lien and have the right to enforce its lien rights if a default is made.

6.  The payment is under the loan documents is $2,437.00 each month. However, payments will not commence until November of 2023.

7.  This is an unimpaired class.

**Class 3 - Priority Unsecured Claims**

1.  This class is comprised of all allowed unsecured claim which are entitled to priority under §507(a)(8).

2.   The Internal Revenue Service holds the only claim in this class and has filed Claim 5 indicating it holds an estimated $50,273.32 in priority claims.

3. The records of the Debtor indicate only $1,298.66 and an objection to Claim 5 will be filed by Debtor.

4. The allowed amount of the Claim will be paid in 36 equal monthly payments commencing on the effective date of the plan which are sufficient to satisfy the claim without interest.

5.  This is an unimpaired class.

**Class 4 - Non-Priority Unsecured Claims**

1.  This class is comprised of nonpriority unsecured claim.

2.  There are an estimated $834,057.09 allowed claims in this class.

3.  This class shall receive a distribution of all available funds after

disbursements are made to administrative claims, Class 1 claims, Class 2 claims and Class 3 claims. Notwithstanding the foregoing, creditors in this class shall not be entitled to receive an amount in excess of their allowed claim.

4. Payments will be disbursed on a pro rata basis each month for 36 months.

5. This is an impaired class.

**Class 5 - Equity Interest of Debtor in the Estate**

1. This class is comprised of the equity interests in the estate held by Debtor.

2. The rights of Debtor in this class shall remain unaltered and unchanged.

3. This is an unimpaired class.

**ARTICLE VII**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Debtor is unaware of it being a party to any executory contract or unexpired lease.

**ARTICLE VIII**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**A. Disputed Claims**

1.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

a.  A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

b. No proof of claim has been timely filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**B.  Delay of Distribution on a Disputed Claim**

1.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

2.  Debtor shall have the power and authority to settle and compromise a disputed claim with court approval in accordance with Rule 9019.

**C.  Disallowance of Claims**

1. A disputed claim shall be deemed disallowed on the confirmation date if a

proof of claim was not timely filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

2. A disputed claim which has been objected to by the Debtor or a party in interest shall be disallowed to the extent the objection is sustained.

## ARTICLE IX: MEANS FOR IMPLEMENTATION OF THE PLAN

### A. Plan Requirements and Means of Implementation

1.  Under § 1123 a plan is required to provide adequate means for its implementation.

2.  Debtor shall continue in its commercial trucking business and repair business. Those are the only sources of its income.

3.  The sources of disposable income for the Debtor are  the profits of the commercial trucking business and repair business.

4. The disposable income and current assets of the Debtor will be used to satisfy the administrative claims and all remaining claims.

## ARTICLE X
## DISCHARGE

### A. Discharge If Confirmation Is of a Consensual Plan

1. Debtor shall be entitled to a discharge if this Plan is confirmed as a consensual plan under the provisions of  § 1191(a) and, after a certificate of substantial consummation has been filed by the Debtor.

### B. Discharge If Confirmation Is of a Non-Consensual Plan

Debtor shall be entitled to a discharge if this Plan is confirmed as a non-consensual plan under the provisions of § 1191(b) only after the Debtor has paid all payments required under the plan (which must equal the disposable income of the Debtor) within the first three years of the Plan, or such longer period not to exceed five years as the Court may fix.

## ARTICLE XI
## DISCLOSURE INFORMATION

### A.  Purpose of Disclosure

Pursuant to § 1190, a plan filed under Subchapter V is required to contain, among other things, the following information: a brief history of the business operations

of a debtor; a liquidation analysis; and projections with respect to the ability of a debtor to make payments under the plan. Further, the plan must provide for the submission of all or such portion of the future earnings or other future income of a debtor to the supervision and control of the trustee as is necessary for the execution of the plan.  The disclosures in this article of the Plan are for the purpose of satisfying those requirements.

## B. History of Business Operations.

1.  Debtor was formed as a Florida limited liability company("LLC") in 2005.

2.  Debtor was formed by Robert B. Greer as a single member LLC. Robert B. Greer was the sole equity owner of the Debtor when it was formed.

3.  The Debtor had two managers from 2005 until 2018.  The managers were Robert B. Greer and his son Charles A. Greer.  Jesse Greer, the son of Charles A. Greer, was added as a manager in in 2019.

4. Charles A. Greer and his wife, Angela C. Greer, acquired the equity interests of Robert B. Greer in 2020 and are now the sole members of the Debtor and own all equity interests in the Debtor.

6.  Charles A. Greer, his wife Angels C. Greer and, their son, Jesse Greer remain as the Managers of the Debtor entity.

7.  Debtor is a commercial trucking operation which transports materials for third parties. Its most notable customer is Behr Paint Company.

8.  The business operations of the Debtor are located at 486 NW 68th Avenue Ocala FL 34482. The location is owned by the Debtor.

9.  Debtor developed cash flow problems when the economy slowed due to the Covid pandemic. This was made worse with the increasing high costs of labor an fuel due to inflationary pressure on the economy. Debtor began factoring its account receivables, however, the high cost associated with factoring made matters worse. Due to collection efforts of those who held factoring agreements, it was necessary to seek relief under Chapter 11 Subchapter V.

## C. Management after Confirmation

1.  Charles A. Greer, his wife Angels C. Greer and, their son, Jesse Greer will remain as the Managers of the Debtor entity after confirmation.

## D.  Liquidation Analysis

1. A liquidation analysis is attached as Attachment "C". The liquidation takes into account all assets and property rights of the Debtor.  This includes the assets which are

encumbered by a lien or mortgage.

2. The indicates that if the value of the assets and property rights which are available for liquidation by creditors is $265,690.

3. Debtor estimates there are only $1,298.66in non-priority unsecured claims. The Internal Revenue Service filed Claim 5 and estimated it held a non-priority unsecured claim in the amount of $50,273.32 for IRS Form 1040 2021, however, the records of the Debtor indicate only $1,298.66 is owed. Therefore, the amount asserted in Claim 5 was not counted in estimating the amount of non-priority unsecured claims.

### E. Projections with Respect to the Ability of the Debtor
### to Make Payments under the Proposed Plan of Reorganization

1. Under the provisions of § 1190(1)( C ) the Debtor is required to provide a projection showing the <u>ability</u> to make the required payments under a plan.

2. The proposed distributions to creditors and interested parties is set forth in Attachment "B" to demonstrate the ability to make the required payments under the Plan.

DEBTOR

Date : April 18, 2023          /s/ Charles A. Greer
                              CHARLES A. GREER
                              Manager/Member
                              Greer Transport LLC


ATTORNEY FOR DEBTOR

RICHARD A. PERRY, P.A.
Law Practice

Date : April 18, 2023          /s/ Richard A. Perry
                              RICHARD A. PERRY
                              Fla. Bar No. 394520
                              820 East Fort King Street
                              Ocala, Florida 34471-2320
                              352-732-2299
                              richard@rapocala.com

ATTACHMENT "A"

# DISPOSABLE INCOME ANALYSIS

## PROJECTED MONTHLY INCOME

| | |
|---|---|
| Cargo Transportation | $ 500,000[1] |
| Truck Repair Shop | $   20,000 |
| **Total Income** | $ 520,000 |

## PROJECTED MONTHLY BUSINESS EXPENSES

| | |
|---|---|
| Employee Payroll | [$ 143,000] |
| Management Payroll | [$  56,000] |
| Contract Labor | [$  60,000] |
| Employee Withholding Taxes | [$  29,000] |
| Worker Compensation Insurance | [$     500] |
| | |
| Bank Fees & Service Charges | [$   1,300] |
| Merchant Account Fees | [$     500] |
| Memberships & Subscriptions | [$     500] |
| Uniforms | [$     650] |
| Legal & Accounting Services | [$   1,000] |
| Office Supplies | [$     800] |
| Software & App Fees | [$     585] |
| Quickbooks Fees | [$     600] |
| | |
| Disposal & Waste Fees | [$     200] |
| Electricity | [$     450] |
| Internet & TV Services | [$     200] |
| | |
| Parking & Tolls | [$  13,200] |
| Vehicle Rental | [$   3,500] |
| Vehicle Fines & Penalties | [$     300] |
| Vehicle Gas & Fuel | [$ 132,000] |
| Vehicle Insurance | [$  19,500] |
| Cargo Insurance | [$   1,700] |
| Vehicle Repairs | [$  30,000] |
| Vehicle Wash & Road Services | [$     600] |
| **Total Expenses** | [$ 506,035] |
| | |
| **Projected Monthly Disposable Income** | $   13,965 |

---

[1] Dollar amounts are rounded to the nearest five dollars

ATTACHMENT "B"

# MONTHLY PLAN DISTRIBUTION PROJECTIONS

## I.  PROJECTED MONTHLY DISBURSEMENTS

Months 1 Through 5

<u>Plan Payment</u>

$ 13,965

<u>Plan Distributions</u>

*Administrative Claims*
Trustee Compensation[1]                        [$  1,000]
Attorney Fees                                  [$  4,000]

*Classified Claims*
Class 1 - Leaf Capital Funding, LLC            [$   1,080]
Class 2 - Small Business Administration        [$    000]
Class 3 - Priority Unsecured Claims            [$    260]
Class 4 - Non-Priority Unsecured Claims        [$  7,625]
                                               [$ 13,965]

Months 6 Through 36

<u>Plan Payment</u>

$ 13,965

<u>Plan Distributions</u>
*Administrative Claims*
Trustee Compensation                           [$ 1,000]

*Classified Claims*
Class 1 - Leaf Capital Funding, LLC            [$   1,080]
Class 2 - Small Business Administration        [$   2,435]
Class 3 - Priority Unsecured Claims            [$    000]
Class 4 - Non-Priority Unsecured Claims        [$  9,450]
                                               [$ 13,965]

---

[1] If confirmed as a consensual plan these funds would be distributed to Class 4.  If confirmed as a non-consensual plan the Trustee will be periodically compensated after submitting fee applications based on his regular hourly rate.  This is estimated to be the maximum amount the Trustee would average under such circumstances. To the extent the fees of the Trustee are less than the estimated amount, they shall be distributed to Class 4.

## II. PROJECTED TOTAL DISBURSEMENTS OVER 36 MONTHS

<u>Total of Plan Payments</u>
$ 502,740

<u>Plan Distributions</u>

*Administrative Claims*
Trustee Compensation [2]                     [$  36,000]
Attorney Compensation                        [$  25,000]

*Classified Claims*
Class 1 - Leaf Capital Funding, LLC          [$  38,880]
Class 2 - Small Business Administration      [$  73,050]
Class 3 - Priority Unsecured Claims          [$    1,300]
Class 4 - Non-Priority Unsecured Claims      [$331,075]
                                             [$502,740]

---

[2]  See Footnote 1 on previous page.  This is estimated to be the maximum amount the Trustee would average. To the extent the fees of the Trustee are less than the estimated amount, they shall be distributed to Class 4.

# ATTACHMENT "C"

## LIQUIDATION ANALYSIS

VALUE OF ASSETS

| ASSET DESCRIPTION | VALUE |
|---|---|
| 486 NW 68th Ave<br>Ocala, FL 34482 | $117,190[1] |
| Fleet Management<br>Software<br>(Subject to<br>Leaf Capital<br>Funding Lien) | $ 33,700<br><br><br><br>[$ 33,700] |
| Office Furniture<br>(Subject to SBA Lien)[2] | $ 2,865<br>[$ 2,865] |
| Account Receivables<br>(Subject to SBA Lien) | $159,785[3]<br>[$159,785] |
| Cash Accounts[4]<br>(Subject to SBA Lien) | $ 27,680<br>[$ 27,680] |
| Commercial<br>Trailers | $102,500 |
| Commercial<br>Trucks | $120,000 |
| | ======== |
| Total Net Value of Assets | $339,690[5] |

---

[1] All amounts shown are rounded to the nearest $5.00.

[2] The Small Business Administration ("SBA") has a blanket lien on all personal property except for the Commercial Trucks and Commercial Trailers and software encumbered by a purchase money security interest held by Leaf Capital Funding.

[3] This is the amount of account receivables of the Debtor as of April 12, 2023. All receivables are due in less than 30 days with rare exception and all receivables are collectible.

[4] These are the available funds in the debtor in possession accounts on April 12, 2023.

[5] This is the total net value of the assets of the estate on April 12, 2023. It does not take into account liquidation costs which are estimated to be between 20 and 40 percent of the net value.

LIQUIDATION COSTS

| | |
|---|---|
| Chapter 7 Trustee Compensation | [$14,000] |
| Attorney Fees for Chapter 7 Trustee | [$25,000] |
| Accountant Fees for Chapter 7 Trustee | [$ 6,000] |
| Wind Down and[6] Liquidation Costs | [$20,000] |
| | ======= |
| Total Liquidation Costs | [$65,000] |

SUMMARY OF ANALYSIS

| | |
|---|---|
| Total Net Value of Assets | $339,690 |
| Total Liquidation Costs | [$ 65,000] |
| | ======== |
| Estate Liquidation Value | $274,690 |

---

[6] This includes costs of securing the trucks and trailers together with real estate brokerage fees and auction costs.